**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KEITH FRAZIER,

     Plaintiff - Appellant,

v.

JOE ORTIZ, Executive Director, CDOC;
COLORADO DEPARTMENT OF
CORRECTIONS ("DCOD"); LIMON
CORRECTIONAL FACILITY ("LCF");
AL ESTEP, Warden, LCF; LOU
ARCHULETA, Warden, LCF; DELAYNE
TORNOWSKI, Associate Warden, LCF;
ANTHONY A. DECESARO, Step III
Grievance Officer, CDOC; JOHN DOE #1,
Law Librarian, LCF; HIGGENBOTHEM,
Law Librarian, LCF; A. COSNER, Law
Librarian, LCF; OFFICE OF
CORRECTIONS/Legal Services, CDOC;
ANTHONY, Case manager, LCF; P.
GABRIEL (#5165), Mailroom Employee,
LCT; C. JACQUES, Mailroom Employee,
LCF; SANDI PATRICK-HENDRIX,
Mailroom Employee, LCF; MAILROOM,
LCF; CATHIE HOLST; Central Reading
Committee Chair, CDOC; OFFICE OF
CORRECTIONAL LEGAL SERVICES;
CENTRAL READING COMMITTEE
CHAIR, CDOC; ACCOUNTING
DEPARTMENT/BANKING SERVICE,
LCF; TREVOR WILLIAMS, Review
Committee Chair, Custody/Control
Manager, LCF; TONY OUTEN,
Custody/Control Manager, LCF; MENTAL
HEALTH/SEX OFFENDER
TREATMENT PROGRAM STAFF, LCF;
JOHN DOE #2, Chief of Clinical Services,
LCF; BILL RUSHER, Reading Committee

No. 10-1133
(D.C. No. 1:07-CV-02131-CMA-KMT)
(D. Colo.)

Chair, LCF; and TOM O'BRIEN, Step II
Grievance Officer, LCF,

      Defendants - Appellees.

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

      Keith Frazier, a Colorado prisoner proceeding pro se, filed a 42 U.S.C. § 1983 civil rights action against numerous prison officials and employees of the Limon Correctional Facility (LCF). Frazier claimed he was wrongfully denied access to subscription music publications while at LCF in violation of his rights under the First (free speech) and Fourteenth (equal protection) Amendments. The district court entered summary judgment in favor of the defendants, concluding they were entitled to qualified immunity. It also denied Frazier's pending motions, including a motion to amend his complaint. We affirm.

## FACTUAL BACKGROUND

      Several years prior to his current burglary convictions, Frazier pled guilty to two

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

misdemeanor counts of indecent exposure, one to a person under fifteen years old. He is a registered sex offender. Currently, he is serving a seventeen-year sentence for two second-degree burglary convictions and two counts of theft under $100.00. The presentence investigation report detailed the circumstances of his burglaries. The victims were young women he encountered while employed as a food delivery person. One victim was a teenage lifeguard who he often saw in a bathing suit while delivering food to the pool where she was employed. He stalked his victims, ultimately entering their homes and removing from their bedrooms photographs, underwear and, in one case, a swimsuit. A search of Frazier's personal items revealed a box of women's underwear and bras, numerous Victoria's Secret catalogs belonging to various women, newspaper clippings depicting young women modeling clothes and articles on sexually motivated crimes. While incarcerated prior to sentencing, Frazier was disciplined for hiding newspaper and magazine clippings of young females in swimsuits and underwear ads in his cell. The Colorado Department of Corrections (CDOC) administratively classified Frazier as an inmate sex offender.

Administrative Regulation 300-26 (A/R 300-26) governs the reading materials provided to CDOC inmates. Generally the CDOC seeks to "respect and respond to the reading needs and preferences of offenders . . . ." (R. Vol. I at 234.) However, reading materials may be restricted if, among other things, the material "is determined to be contrary to . . . the individualized rehabilitative goals set forth in writing for a specific offender by the DOC." (*Id*. at 235.) In addition, Mental Health or Sex Offender Treatment Program staff may set more stringent individualized rehabilitative standards

for a specific offender.  Due to his criminal history, Frazier was given the following written individualized restrictions:

> Inmate will not have in his possession any materials that are deemed erotic, sexually oriented, or sexually stimulating[;]
>
> Inmate has a history of sexual assault – indecent exposure against a female minor, possession of materials depicting sexually stimulating females are contrary to rehabilitative goals[;]
>
> Inmate's misdemeanor case involved a juvenile and pictures of juveniles should not be possessed[;]
>
> Inmate should not possess pictures of young women and girls in underwear and swimsuits, or pictures of these clothing items.

(*Id.* at 233.)

The procedure for screening an inmate's reading begins in the mailroom, where a member of the staff makes an initial assessment of the incoming materials.  If there is a question regarding their appropriateness, the staff refers them to the LCF Reading Committee for review.  If there are less than five pages of restricted material within a publication, the offending material is removed and the publication is given to the inmate.  If there are five pages or more, the publication is withheld in its entirety.  An inmate may appeal this decision to the CDOC Central Reading Committee.

Frazier subscribes to several music publications including <u>Rolling Stone</u>, <u>Maxim</u>, <u>Blender</u> and <u>Spin</u>.  From May through July  2006, the delivery of some of the magazines were delayed and others were withheld entirely.  Frazier unsuccessfully sought review of each of the LCF Reading Committee determinations by the Administrative Head and the CDOC Central Reading Committee.  Frazier then filed his § 1983 complaint raising several issues.  The only claims on appeal, however, relate to the alleged violations of his

- 4 -

First and Fourteenth Amendment rights based on the restriction of his reading material.

## PROCEDURAL BACKGROUND

After the dismissal of all but two of Frazier's claims, a scheduling order set a November 10, 2008 deadline to file an amended complaint and a March 27, 2009 deadline to conclude discovery. The defendants did not respond to Frazier's requests for discovery. Instead, they filed a motion for summary judgment on May 21, 2009. On June 29, 2009, armed with the attachments to the defendants' motion for summary judgment, Frazier responded with a combined motion for summary judgment and response to the defendants' motion for summary judgment.

On the same day, Frazier filed a request to amend his complaint to add previously unknown defendants. The magistrate judge denied his motion to amend because he had not explained why the new defendants were necessary, had not filed a complete amended complaint with his motion, and the deadline for amending the complaint had passed more than seven months earlier. Frazier filed an objection to the magistrate's order and a supplement to his motion for summary judgment.

On July 16, 2009, well past the deadline to conclude discovery, the defendants responded to Frazier's discovery requests. On July 29, 2009, Frazier filed an additional supplement to his motion for summary judgment based on alleged regulatory violations in the process of withholding his publications and the disposal of his materials.

On August 21, 2009, the magistrate judge recommended the defendants' motion for summary judgment be granted and Frazier's cross-motion be denied. Frazier objected. On December 22, 2009, he filed a second motion to amend his complaint and

requested permission for an extension of time to do so.  The magistrate once again recommended his motion be denied and Frazier again objected.  He submitted an amended complaint on January 20, 2010, with a "redone" motion to amend.  (Appellant's Opening Br. at 5.)  The magistrate again recommended the motion be denied and Frazier again objected.

On March 10, 2010, the district court adopted the magistrate's August 21, 2009 recommendation and granted the defendants' motion for summary judgment and denied Frazier's cross-motion.  It rejected Frazier's Fourteenth Amendment equal protection claim because he failed to identify any "similarly situated" inmate sex offenders who were treated differently.  The court then noted and approved the magistrate's detailed analysis under *Turner v. Safley*, 482 U.S. 78, 89 (1987), in reaching the conclusion that A/R 300-26 was a valid exercise of the prison's authority and the materials denied to Frazier were appropriately restricted.  As a result, Frazier failed to show the denial of a constitutional right.  In the alternative, the court concluded prison officials reasonably relied on the regulation in restricting Frazier's reading materials.  Thus, the defendants were entitled to qualified immunity.  The court denied all remaining motions as moot.

## DISCUSSION

The crux of the matter is whether Frazier established a violation of his clearly established constitutional rights and whether the court erred in denying his motion to amend his complaint to cure the deficiencies in his Fourteenth Amendment equal protection claim.  Generally, pleadings by pro se litigants are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers.  *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991).  But we do not "assume the role of advocate for the pro se litigant."  *Id*.  Pro se status "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," *id*., or excuse a failure to follow the fundamental rules of civil and appellate procedure.  *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

A.      Motion to Amend

Frazier claims the district court erred in denying him the opportunity to amend his equal protection claim in January 2010.  "We ordinarily review a denial of a motion to amend a pleading for abuse of discretion."  *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1249 (10th Cir. 2009).  But we review the legal basis for a finding of futility de novo.  *Id*.

The magistrate judge denied Frazier's motion because Frazier failed to give an adequate reason for his delay in filing a sufficient motion to amend.  The information Frazier allegedly relied upon in his amendment had been available since at least May 21, 2009, and the case was more than two years old.  She also concluded an amendment would cause undue delay because the Defendants' motion for summary judgment was pending.  Further, the proposed amended complaint would not cure the deficiencies of proof identified in the recommendation regarding Defendants' summary judgment motion.

Frazier argues the denial of his motion to amend is an injustice for two reasons.  First, he tried to amend his complaint several times prior to January 2010, but the magistrate judge was "completely unwilling to let [him] amend his pleading after the

deadline." (Appellant's Opening Br. at 8.) According to Frazier, any delay was caused by the defendants' failure to provide timely discovery. Frazier ignores the fact that his earlier attempts to amend did not comply with the court's rules.

Second, Frazier claims he should have been allowed to amend his complaint because his "Fourteenth Amendment 'equal protection of the laws' and procedural 'due process' claims[1] literally depended upon him being allowed to amend his pleadings as requested." (Appellant's Opening Br. at 8.) He complains the district court granted summary judgment on his equal protection claim because he had not identified a "similarly situated" inmate who was treated differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.") (quotations omitted).[2]

Frazier argues his proposed amended "verified complaint" "cured" his original pleading's defect by alleging: "The plaintiff discovered in July of 2009, via the 'Notice to

---

[1] Frazier's due process claims were dismissed by the district court in an order dated September 16, 2008. Only his free speech and equal protection claims remained.

[2] To the extent that Frazier is arguing a "class of one" equal protection claim, as recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), a showing that similarly situated persons were treated differently "is especially important in class-of-one cases . . . . [T]he multiplicity of relevant (nondiscriminatory) variables requires plaintiff to provide compelling evidence of other similarly situated persons who were in fact treated differently." *Bruner v. Baker*, 506 F.3d 1021, 1029 (10th Cir. 2007) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213, 1215 (10th Cir. 2004)).

Publisher' form he acquired, that he was the only one of the LCF's approximately 800 inmates to have [Blender magazine] censored; as this was not done for 'similarly situated' sex offender Martin . . ., for example, it demonstrates that his 'unequal treatment' was the result of intentional and purposeful discrimination . . . ." (R. Vol. II at 13.) But on the next page Frazier claims only he and "Martin" were denied the August issue of Rolling Stone magazine. Thus, assuming "Martin" was also restricted under an individual rehabilitation plan, Frazier's allegations establish only that the reading committee was applying the individualized plans to both offenders. Moreover, Frazier claims he received this information in July 2009, but he did not attempt to provide the information prior to the magistrate judge's August 21, 2009 recommendation on summary judgment or at any time before January 2010.

In sum, Frazier's proposed final amended complaint adds length but not substance to his claims. The magistrate judge did not abuse her discretion in denying Frazier's motion to amend made six months after he received the information he claims he needed and over four months after the recommendation to grant defendants' summary judgment motion was pending before the district court. *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (holding that untimeliness in itself can be a sufficient reason to deny leave to amend).

B.    Summary Judgment/Qualified Immunity

Generally, we review the grant of summary judgment de novo, applying the same legal standard as the district court under Rule 56(a) of the Federal Rules of Civil Procedure. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Summary judgment is appropriate "if the Movant shows that there is not genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, review of summary judgment orders in the context of qualified immunity is slightly different. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). An assertion of qualified immunity at summary judgment shifts the burden to the plaintiff to show: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Thompson*, 584 F.3d at 1312 (quotations omitted). We construe the facts in the light most favorable to the plaintiff as the nonmoving party to determine whether he has met his burden of establishing a clearly established constitutional violation. *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007). Even so, "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record . . . ." *Thomson*, 584 F.3d at 1312.

The First Amendment protects a prisoner's right to receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Prison officials may regulate that right, however, as long as the regulation is "'reasonably related to legitimate penological interests.'" *Id*. at 409 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The *Turner* test requires a court to weigh four factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2)

- 10 -

"whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" to the regulation. 482 U.S. at 89-90 (quotations omitted). Courts must conduct this analysis giving "substantial deference" to prison authorities. *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1991).

In addition to the four-part test, *Turner* clearly establishes that "restrictive prison regulations [including restrictions on First Amendment rights] are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citation and quotations omitted). Frazier argued A/R 300-26 was unconstitutionally vague on its face and, as-applied to him, it was an exaggerated response to the prison officials' legitimate penological concerns.

After a de novo review of the magistrate judge's recommendation and Frazier's objections, the district court adopted the magistrate judge's analysis of the *Turner* factors as they relate to A/R 300-26. Frazier's facial challenge to the regulation failed because: (1) the CDOC's valid penological interest in rehabilitation bears a rational connection to individualized rehabilitative plans for inmates; (2) inmates retain access to all publications which are not contrary to their rehabilitation goals; (3) unrestricted access to sexually explicit material would threaten the safety of the general prison population; and (4) Frazier had not suggested any alternative which would further the rehabilitative interest at issue. Frazier's as-applied challenge was unsuccessful because he failed to

offer any confiscated material that did not reasonably fall within his individualized restrictions.

On appeal, Frazier states:

In response to said 'Recommendations' . . . the plaintiff tendered a set of 'Objections' . . . which rebutted the Magistrate's <u>opinions</u> on each of the '<u>Turner</u>' factors with absolute precision and finality (in some of the best work the plaintiff feels he's done in nearly six years of litigation) and yet they seem to have garnered virtually no consideration by the District Judge at all in her final ruling on this matter.

(Appellant's Opening Br. at 12.) He devotes a considerable portion of his brief castigating both the magistrate judge and the district court for their actions in this litigation. As a result, he leaves little room for argument on the issues. Basically, he reiterates his belief that "(1) the 'individualized restrictions' placed upon [his] reading materials were far too stringent with regard to the actual facts of his prison conviction [burglary/theft] and (2) the Defendants nevertheless abused their discretion in going far beyond their own guidelines in censoring [his] publications because said restrictions were facially vague so as to elicit subjective interpretation and arbitrary (and, hence, unconstitutional) enforcement." (*Id.* at 12.) In the end, he merely refers us to paragraph 48 in his proposed amended complaint, pages 5-7 in his summary judgment pleadings and pages 1-8 in his objections to the magistrate judge's recommendations "for virtually everything that needs to be argued concerning this appeal issue." (*Id.*)

Solicitously reviewing these materials, as we must for a pro se appellant, Frazier's arguments are unpersuasive. As we perceive it, Frazier is challenging the constitutionality of the prison's regulation as it was individualized to his situation—an as-

applied challenge. He insists his individualized plan "was based upon irrelevant, misleading, and/or patently false information" and thus does not serve a valid penological interest. (R. Vol. I at 412.) But as the district court advised, Frazier's denial of the facts in the presentence report is not at issue here. The CDOC was not arbitrary in accepting these facts as the basis for Frazier's rehabilitation plan. Frazier also argues his individualized plan does not meet the second *Turner* factor because he has no alternative means "to keep in touch with the music scene." (*Id*. at 415.) However, it is uncontested that only a few magazines were confiscated. Frazier received others in their entirety or with only a few pages removed.

Frazier also contends his individualized plan is unconstitutionally vague because it does not define with particularity the age of the "young women and girls in underwear or swimsuits" which are prohibited and the plan's "[a]djectives such as 'erotic,' 'sexually oriented,' and 'sexually stimulating' are just too abstract to be interpreted the same way consistently from person to person." (*Id*. at 413-14.) He alleges LCF's actions are an "exaggerated response" because it is the only facility (out of six where he has been incarcerated) that confiscated these materials. We disagree. The magistrate judge and the district court considered the pages restricted by the LCF reading committee in a confiscated <u>Rolling Stone</u> magazine and correctly concluded the material was clearly subject to the valid restrictions in Frazier's individualized plan.[3]

_____

[3] For example, one of the restricted pages contained a photograph of a musician in a very slight bikini with the editorial note: "Stone a Bone[.] Hellooo, Joss Stone! The soul singer traded in her Joplin-esque duds for something sexier on the Barbados' beaches." (R. Vol. I at 279.)

Finally, Frazier claims the CDOC's failure to provide him all the restricted materials in response to his discovery requests made it impossible for the district court to determine whether all the publications were reasonably confiscated.[4]  Although Frazier repeatedly moved the district court to compel production of the publications, he concomitantly alleged the CDOC had destroyed the confiscated publications.  Therefore, his publications were no longer in CDOC's possession.  The CDOC also responded that "[b]ecause the threshold issue involved in this case is whether Plaintiff is allowed to possess these items, censored portions of the publication cannot be produced to the Plaintiff."  (R. Vol. I at 379 n.4.)  Indeed, "all inmates could then obtain copies of prohibited material merely by initiating litigation."  (*Id.*)  The solution, of course, was for Frazier to file a motion or an affidavit pursuant to Rule 56(d) to allow the judge to conduct an in camera production and inspection of the restricted materials.  He did not do so.  The district court did not err in holding Frazier to his Rule 56 burden.

Frazier has not presented a material issue of fact demonstrating the CDOC defendants violated his First or Fourteenth Amendment rights.  Therefore, defendants were entitled to qualified immunity and summary judgment in their favor was warranted.[5]

---

[4] The magazines were destroyed at the time they were denied to Frazier or thrown out when Frazier was transferred to another facility.  Frazier submitted five pages from one confiscated magazine which he procured himself.

[5] Given this conclusion, we need not address Frazier's damages claim.

**AFFIRMED.**  Frazier's request to proceed *ifp* is **GRANTED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge